UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 10-20517-CR-UNGARO

UNITED STATES OF AMERICA

vs.

MICHEL DE LA OSA and
NIVIO CHAPLE,

Defendants.
_____/

PLEA PROFFER

If this case were to proceed to trial, the United States would prove beyond a reasonable doubt that from at least as early as 2006 through on or about November 2009, the defendants Michel de la Osa and Nivio Chaple conspired to possess with intent to distribute five (5) kilograms or more of cocaine in violation of Title 21, United States Code, Section 846 and 841 (a)(1).

On November 12, 2009, DEA agents with the assistance of Hialeah Gardens Police Department officers followed Cesar Gonzalez as he made cocaine deliveries. Shortly thereafter, they conducted a traffic stop and searched Gonzalez's vehicle. In his vehicle, agents found 13 kilograms of cocaine. During a subsequent consensual search of Gonzalez's residence, agents found approximately seven (7) kilograms of cocaine, approximately $35,000 in cash, a detailed drug ledger, and two (2) money counting machines. Gonzalez later told agents that Chaple delivered 41 kilos to him that day--agents observed Chaple's vehicle at Gonzalez's house earlier in the day-- for

distribution to Joaquin Reigsoa's buyers. Surveillance units saw a car registered to Chaple being driven by a male back into Gonzalez's driveway.

On November 21, 2009, agents arrested Joaquin Reigosa by complaint and arrest warrant. Agents obtained consent to search Reigosa's residence. During the subsequent search agents discovered, among other things, approximately $60,000 in cash, bank records, and a drug ledger. Reigosa and Gonzalez later provided historical information about the organization and its clients identified in the ledgers.

De La Osa was Reigosa's business partner in the drug trafficking organization. Beginning in 2006, De La Osa and Reigosa started moving cocaine that they received from their Source of Supply of cocaine in Mexico to South Florida. It was at this time that Gonzalez joined the organization. De La Osa used his trucking business, Gelo Enterprise Truck Brokers, Inc. in 2003 and utilized the trucks from this business to move the drugs to South Florida and to return the proceeds to the Mexicans via El Paso. These vehicles are subject to forfeiture. According to Reigosa, De La Osa paid himself $1000 per kilo of cocaine for his role coordinating the shipments. State of Florida incorporation documents corroborate Reigosa and DE LA OSA's partnership in this business.

Nivio Chaple joined the organization in 2008. CHAPLE's role was to drive to an exit off of Interstate 10 to meet the tractor trailers before they had to go through the tractor trailer x-ray. The drugs would be transferred to CHAPLE's vehicle and he would drive them to Miami to avoid detection via the tractor-trailer xrays. Once in South Florida, Chaple would deliver the cocaine to Cesar Gonzalez. According to Reigosa, Chaple was paid by De La Osa. Gonzalez and Reigosa confirmed that Chaple delivered 41 kilos of cocaine to Gonzalez on November 20, 2009.

Post arrest, De La Osa admitted his participation and above described role in the conspiracy. Chaple subsequently admitted his participation and role in the conspiracy after being debriefed by the agents.

Based upon this and other evidence, the United States would have proven beyond a reasonable doubt that the this defendant was guilty of conspiring to possess with intent to distribute cocaine.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 11/18/10     By: _____
                   KARLYN J. HUNTER
                   ASSISTANT UNITED STATES ATTORNEY

Date: 11/18/10     By: _____
                   KENNETH WEISMAN
                   ATTORNEY FOR DEFENDANT

Date: 11/18/10     By: _____
                   MICHEL DE LA OSA
                   DEFENDANT